Good morning everyone. Welcome to the Illinois Appellate Court, 1st District, 1st Division. We're going to ask the lawyers who are going to argue today to step up, introduce yourselves, and tell us whom you represent. Good morning, Your Honor. My name is David Lieberman. I'm with Levin, Schrader & Carey. I represent certain of the respondents to the Bank of America's petition, the respondents referred to in the briefing as the later-born grandchildren. I'm glad for the opportunity to be here. And who's arguing on the other side? Good morning, Your Honor. My name is William O'Keefe. I'm a sole practitioner. I represent the named grandchildren of the parties for whom the trial court ruled. All right. Thank you, Mr. O'Keefe. And do we have counsel from Bank of America also here? Yes, Your Honor. Bill Catras on behalf of Petitioner, Bank of America. I was not anticipating argument, although I am available for any questions. All right. And you did not file a brief, is that correct? We did not. All right. Very good. All right, Mr. Lieberman, let me, before you begin, we'll provide about 15 or 20 minutes for each side and then an additional 10 minutes for rebuttal. We may change that if we have a lot of questions or if argument becomes repetitive. Please remember to speak loudly. Our microphones really don't amplify very well. They simply are for tape recording purposes. And please understand we have read the briefs and are familiar with the facts of the case. So devote your time. We are familiar. We have read the briefs and we are familiar with the facts of the case. So devote your time to your strongest arguments. Mr. Lieberman. Thank you again for the opportunity, Your Honors, to be heard. The appeal here arises from an action in equity to construe an ambiguous provision of a trust. Bank of America, as trustee, petitioned the trial court to construe this trust, alleging that it contained a latent ambiguity. The trust provision at issue presents a matter of first impression in the Illinois is made to, it identifies a class such as grandchildren, names specific members, and then additional members are born later. There is no reported decision you'll see in the briefing or the trial court's opinion on that issue. And the bank alleged in its petition that it's a matter of first impression and nobody's. Do you think the Pennsylvania Supreme Court case is your best authority for your argument? Is the best what for the argument? Authority for your argument. Well, I think actually the three other state court opinions all, I think their analyses are all the same. They're all good authority. They're obviously not authority in the true sense. But as we try to stress in our briefs, and I can address this today if that's the court's question, we believe those opinions are harmonious with more general Illinois principles of trust construction. We think all the Illinois cases are also in accord with the, certainly the finding that the trust provision is ambiguous, and second, with the construction that we are urging that Mr. Cox intended to make a gift, a class gift to all of his grandchildren. But the Pennsylvania, certainly illustrative of the type of analysis that we would ask this court to undertake in addressing this provision, and consistent with Illinois authority on all fours, just Illinois hasn't addressed this specific type of ambiguity. Counsel, the trust date was April 23, 1958, is that right? Yes. Okay. On that date, was it ambiguous? On that date? Well, it was ambiguous only if you assumed other grandchildren were going to be born later. But on that date? Well, I would argue, yes, it was ambiguous because it left open the question, what happens to grandchildren who come after that date? The trial court obviously held, as a matter of law, in a trust construction action, the method of analysis is, first, the court needs to determine whether the provision at issue is ambiguous, and that then determines whether extrinsic evidence is relevant to the analysis. Here, the trial court construed this provision at the initial threshold issue as unambiguous, and how I'd like to spend my time here, obviously first addressing the court's questions, second, reviewing the trust provision, and why we believe it's ambiguous, and why we believe the trial court erred, and then the proper construction, and if there's time, get to the issue of fees, although I don't think there's a lot of debate about the law governing that. Just getting to the trust, the settler, Herbert Cox, established this trust, as the court has pointed out, in 1956. Very interesting man. Most of that is not germane to the case, except for a couple of particular facets. He was born in 1903. He formed Diversity Corporation, which became a very successful company. This trust was funded with stock in Diversity Corporation, and because that company was so successful, even after supporting this former wife of Mr. Cox for 50-plus years, there's nearly $2 million left in the trust after she died 56 years later, and that's the corpus of the trust at issue now. But we do think that the funding of the trust only with stock in this corporation does speak, actually, to the extrinsic evidence that would be relevant to the interpretation. The other relevant part of Mr. Cox's life that's obviously relevant is he married several times, four times, and he had many grandchildren through his children from his different marriages, and this trust, as the court is aware, was established as part of a divorce settlement in a divorce with his third wife, Phyllis Picker, and in that marriage there were no children, and the terms of the trust were Mrs. Picker. Mrs. Picker was a lifetime beneficiary, and she supported the rest of her life with that trust, and then after she died decades later, the residuary was left to the grandchildren, and that's where we get to the provision that's at issue here. One of the things in the record that doesn't help you, and I want you to talk about it, is that there is some documentation that the settlor was fully aware of the problem of the four versus the 11 grandchildren, somewhere, I think, in the 1970s, and had corresponded with Continental about that. Now, at that point, he couldn't amend the provision to add the extra grandchildren, but wasn't there something where he allotted some extra money to the younger grandchildren sort of to make up for what they would lose when the third wife died? Absolutely not. Okay. And one of the issues here is the trial court never got to the extrinsic record and never dealt with it. The idea that he made up, he was a very wealthy man, a very wealthy man. He had established many trusts, and his parents, his father also formed a company that was very successful. This is a family of great wealth in its day. There were a number of trusts, a number of wills, and because he has two children, he had two children, one was dead, but from his fourth marriage, Mr. Koch had two children, who did not take under a trust from Mr. Koch's parents, the grandparents. And so there was money set aside in his will for them, but exactly what it made up for, I mean, this trust is actually relatively small in the context of the overall wealth that Mr. Koch had and that his grandchildren and children had as a result of all this family wealth. There was actually the divorce from the second wife. There was a much larger trust also funded with stock in this company. And there is no way from this appeal record that this court can sort out all the evening up of the different trusts. Mr. Lieberman, I don't want to cut you off, but that wasn't the question. The question I have, which is what Justice DeLorte asked, isn't there some suggestion, I think it's more than a suggestion, in the record in which the settlor had written to a trust officer at the bank referring by name to his four eldest grandchildren and saying, well, you know, these are the ones who get the rest of the money when Phyllis dies. And at that time he had other grandchildren and he knew it. So how do you reconcile that with the fact that he meant for all of them to get the remainder? I mean, how can you reconcile the two? I would like you to speak to that, and that's what Justice DeLorte was asking. I appreciate that. I understood Judge DeLorte's question. You have two parts, so thank you. Here's the part I didn't get to. And that, first of all, if I could correct the premise, I believe that Judge DeLorte said that that letter did not come out of a dispute over who were the beneficiaries of these grandchildren. It was an aside in that letter. And how it came to be framed that way, first as a matter of law, extrinsic evidence from 20 years later is irrelevant. But nonetheless, that letter says what it says. Why he wrote that, whether he was parroting an interpretation he heard from the trust officer, I mean, our contention, actually, when we examined the whole record, which was presented to the trial court on summary judgment but it didn't get to the extrinsic evidence, is that the original bank was Continental Bank, I believe, that they, in their notes about this trust, misstated what the provision said. And that became the interpretation internally. And he was writing, Mr. Cox was writing in that letter about, it was a much bigger issue, and it was a dispute over control of the stock. There was a big fight between Mr. Cox and his second wife over control of this company before it, that was after it went public, but before it was acquired by Molson Companies in 1978. And that time he was positioning the company for a sale. And there was a big fight, again, with Mrs. Crispin, his second wife, over, you know, they had a lot of litigation going on at that time. And that letter needs to be construed, in our view, in that context. He was writing to Continental Bank focused on control of the stock. And he made an aside reference to the trust as the trust for the four grandchildren. That's true. But whether it had nothing to do with a dispute or clarifying his interpretation, it appears, if you examine the whole record, that he's just paring back. How do you know that, Mr. Lieberman? How do you know that? How do you know it had nothing to do with clarifying who the remainder men should be? If you look at the letter, Your Honor, it is focused on control of the stock in this company. And if the extrinsic evidence is relevant, then we should have had an opportunity in the trial court to have an argument based on extrinsic evidence. But what happened is the trial court cut it off at the threshold question, saying there's no ambiguity. I'm not even going to look at any extrinsic evidence. But there's a whole record of what was happening in the 70s in the context of that letter. And to look at it in isolation, we believe, is misleading and unfair and, again, out of context. And, again, there is also the legal principle that in examining extrinsic evidence of intent, the court is to look at evidence from the time the document was executed, not 20 years later. Counsel, can I ask you about the trial court's ruling? The trial court says it must be noted the only undisputed admissible extrinsic evidence before this court that the trust was executed as part of a divorce settlement. That's the only undisputed admissible extrinsic evidence? That's what the court said. I don't believe that's accurate. Well, I'm looking at the ruling. No, I believe that's what the court said. My view is the court was incorrect. I'm sorry. Explain that to me. Why is the court incorrect in making that statement in the ruling? Why? You said there was no extrinsic evidence considered by the court. Well, just as a matter of law, if the court's determination is the instrument is unambiguous, then it can't look at extrinsic evidence. It just interprets it. Right. And if it's ambiguous, then obviously under the trust construction, rule construction principles, then extrinsic evidence is relevant. So you're saying the basis, there was an improper basis for the court's ruling? I believe it's erroneous. I don't have any explanation other than what's in that document. We don't agree with parts of the court's opinion, and that's why we're here. But that part, I can't explain it, Your Honor. I don't agree with it. Okay. In any event. Counsel, are you asking us to overrule the court in what says that it is not ambiguous? Is that all you're asking for today? Or are you asking for ruling beyond that? And asking to have it sent back for hearing on the ambiguity? That would certainly be appropriate relief. Certainly we think that ruling that it was unambiguous is erroneous, for all the reasons we stress in our brief. And then if this court is in a position to consider all the extrinsic evidence and make a determination, it could do that. It may be more appropriate in our view to send it back to the trial court, where you can have a full hearing on that issue. It may not be a summary judgment issue. It may be an issue that should be tried, but we didn't get to that point. And then there's also the issue of fees, which are contingent on whether the court thinks there's a good faith, honest difference of opinion here, and that is in part dependent on the court's finding whether there's an ambiguity. As to that issue, I stress that this was a petition brought by an institutional, reputable, professional trustee, Bank of America. It appropriately took a neutral position. You have two different factions of grandchildren with different interests. They retain counsel and view this as a good faith ambiguity. We actually were the ones that initiated it and took most of the discovery and obtained that letter and all of that. It seems to us unfair to our clients to be named as respondents in this petition, to pursue it in good faith, to pursue discovery that may shed light or not on interpretation, and then to have a ruling that we believe is error, from which the question of whether fees are paid from the trust becomes in doubt. And the court, as we say, punted on that issue. Let's rewind a moment to when you were talking about remanding for a possible trial. What would be the evidence induced at that trial? There's a lot. There's documentary evidence. I mean, we would take the position that evidence from after 1956 is not relevant, because that's what the law says. And the irony is that the trial court cited those cases in coming to the conclusion that we say is error, that you can't look at subsequent events to determine whether there's ambiguity. But those cases clearly hold. The cases that the trial court cited, those cases clearly hold. You can't look at post hoc information. So the court needs to determine what's the relevant scope of extrinsic evidence. One of the things I remember reading was some reference to the settlor's long-time personal secretary, who was sort of a right-hand woman, handled a lot of the finances. And I think she's deceased now, too, if I'm not mistaken. She what, I'm sorry? I think she's deceased, too. No, she's alive. She's alive, okay. Denise Axtell. And then is that an example of something you might bring in to say, well, he never intended to penalize the younger grandchildren because he treated them all equally? Yes, she's alive. We submitted a declaration from her. I've interviewed her. I don't want to go outside the record to tell you. I'd like to tell you what she said. But absolutely, I think her testimony from all her years and the course of dealing with Mr. Cox, I think her testimony would support the construction that we're urging. Counsel, would it be extrinsic evidence, the fact that children, grandchildren were born after the signing of this trust? Would that be extrinsic evidence? Yes. Under the trust definition. Yes, it is. Yes, I believe that's correct. So that even wouldn't be admissible? No, because that is relevant, and this is where we believe the critical error is that the trial court made. In determining whether there's an ambiguity, the births of later grandchildren is relevant because there isn't this temporal cutoff when it comes to determining whether there's an ambiguity. And if you look at the three, again, we don't have an Illinois case on point, but if you look at the three cases we cite from the other states, clearly, you know, they say it becomes ambiguous because you have specific named ones and then you have ones that come later. So that's an exception to the rule that intrinsic evidence is not allowed after the date of the signing. I'm sorry. The next step is what? That's all right. Never mind. Go ahead. And I'll let you wrap up at this point. Okay. I appreciate the court's question because they're right on at the heart of the case, and obviously there was a lot of care in reading the briefs. But, yes, we'd ask the court to reverse the finding that there's no ambiguity. We'd ask the court to give guidance as to the relevant scope of extrinsic evidence. Is it limited in time to as of the date of execution? Relative, relevant extrinsic evidence in determining an intent. We'd ask the court to give the trial court guidance as to the issue of fees because we think that was a motion for summary judgment that the court didn't decide because it wanted briefing from Bank of America, which decided to abstain appropriately in our view. But there's no dispute as to the law, whether there's fees. There has to be an honest difference of opinion. It seems to me just looking at this trust provision and all the law that's relevant from other states, there's clearly an honest difference of opinion. And three states that have looked at these provisions have come out finding they make class gifts to everyone, not specific gifts. So we'd ask for that guidance to be given to the trial court in sending it back. Thank you. Thank you. Mr. O'Keefe? Thank you, Your Honor. Can I address some of your previous questions? Of course. First of all, as of the date the trust was executed, there was clearly no ambiguity. There were four people that the settlor knew and loved that he provided for. There were good reasons to provide for them at that time, and those reasons were that he had a daughter, Susan, who had gone through an unfortunate divorce, had two babies, and I believe that he felt sorry for her. And he provided for the two babies. He provided also for two brothers, Shaw's, who were his eldest grandchildren, born of his grandchildren of his first wife, Elizabeth. But they were all his grandchildren. Correct. They were all his grandchildren. Whatever the history is. Correct. They were all his grandchildren. So to the extent that we apply the rule that specific names trumps a class designation, it's clear at that point that there is no ambiguity. Secondly, I'd like to address the issue of extrinsic evidence. The trial court very clearly and meticulously kept his remarks carefully to only extrinsic evidence that was available at the time that the trust was entered into. So, for example, he noted in footnote two that there were other letters that were available, but they were not contemporaneous. And therefore, since he based his opinion on only the issue of no ambiguity and on the fact that the language of the trust agreement was clear, that the trust agreement was irrevocable, non-amendable, the named individuals were the sole people to take. And that's what he found. And he stayed right to that rule. So he never went to those two letters that you were referring to, even though they existed. And he acknowledged that they existed. When I filed this. Let me ask you. Yes. You know, it seems that the ambiguity that your opponent is arguing about, really in paragraph C of the trust document, has to do with the words then living and namely in which he names. If those words were assuming for a moment that the trust is irrevocable and it's non-amendable, if we hypothetically changed those two words to now living or currently, would that make a difference in your opinion? So let me read what I'm talking about. Upon the death of both Phyllis Anderson and her mother, Anna, whatever her name is, Anna Drobner, the trust estate then in the hands of the trustee, after making the distribution provided for in paragraph B above, shall be distributed in equal shares to those who are, and it now says, who are then living. But if he had written, if the lawyer had written who are now living of the settler's grandchildren, and instead of saying namely, change that to currently William Robert and so on, would that make a difference? Would that make it clearer? Well, it wouldn't necessarily make it clearer because this is what he intended. If he had intended something different, he would have simply said, I leave to my grandchildren, without mentioning any names at all. There was no need to mention names. That was my next question, so you anticipated me. Counsel, what about the fact that this was drawn by a divorce attorney, not a probate attorney? In 1958 or 56, I forget what the date of the trust is, weren't the terms per capita and per stirpe used on a regular basis as far as, you know, a probate? Yes. And he didn't put, I mean, there was nothing in there. If one grandchild dies, does it go to the stock or does it go to the head? None of that was in there. Well, I believe it is in there, Your Honor. Per stirpe is per capita, and that's such a thing? No, per capita is not used. I believe that it provides that if one of the four dies with children, the children take. But let's look at that point of the attorney. The attorney, Joseph Rosenberg, was not only attorney for the settlor here. He was also attorney for the settlor in the Crispin divorce or the Mildred Cox divorce, which was in 1955. So, in other words, this attorney was totally familiar with all the familial situations of the Cox family. But that can go both ways, can it, Counsel? I mean, I wouldn't have my divorce attorney do my will or my trust. I just wouldn't, even though he knew my family. You know, Your Honor, I've thought about this. It's inconceivable to me how a settlor can hire an incompetent attorney or not experienced attorney to represent himself when he's paying Harvey Hodes and Montenband to represent his wife. And therefore, I mean, it's inconceivable. People of wealth don't have attorneys that don't know what they're doing. No, Counsel, we can't make that generalization, can we? Well, it's closed. All right, continue. Mr. O'Keefe, do you agree that this is a case of first impression in Illinois? No. All right, and why not? Well, first of all, it's similar to the FACTS situation, which are in both the Clancy cases and Senate v. Collett, which involve adopted grandchildren, where the grandchildren were adopted 12 years in the Collett case, subsequent to the settlor entering into the trust. There's no difference between adopted grandchildren and just regularly born grandchildren. They're grandchildren. What counsel continues to try to do here is to create some type of super exception so that if the court has never dealt with this exact FACTS situation, it's something special. It's not something special. The same rules apply. And the rules as set out in Young v. Whistler and 10 other cases which are cited are very clear on how these things are handled. And the question of uniqueness has been handled before, not in connection with grandchildren, but I forget which case it was, but nephews and nieces, uncles and aunts. There are just a myriad number of familial type cases. Counsel, are you saying that Senate v. Collett-Ozer and the Clancy case both say that Bloodkin versus adopted, there's no distinction? They don't say that, Your Honor. I say that. Well, the cases don't say it, though. No, but they are as close as you can get. They're grandchildren. I'd like to, if I could just move on to the... Counsel, I'd like to ask you about the letters. I asked your opponent about... That's where I'm going. Okay, well, I'll let you go before I ask. Okay, first of all, the record in this case was incomplete until nine days ago, at which point a supplemental record was certified, submitted, and ordered by this court to be part of the record. The original record did not include the entire letter, the August 11, 1972 letter. It included the first two pages and then just skipped over and went to the next number. It also did not include the second letter that the settlor wrote to the bank in August 20, 1975, which was labeled Exhibit B. These letters are now included in the supplemental record. Also, the other document in the record, which contained these two letters, was named grandchildren's motion for summary judgment against Bank of America, challenging their fees and other costs. There was mention of this document in my brief, but I couldn't cite anything because that was not at the time in the record. It is now in the record. The same two exhibits are attached there. Was it before the trial court? Yes. It was part of the document submitted in favor of opposition summary judgment. It was just omitted by the clerk. Absolutely. All right, thank you. Okay, let's get back to the letters. Mr. Lieberman has characterized the August 11, 1972 letter as being involved with the construction of the Crispin Trust and the difficulties regarding the boating of the diverse stock. He is confusing letters, which are in the Continental File. The letter of August 11, 1972 contains not one mention, not one word about stock. The only thing that it talks about is trustees' fees and then goes on to detail what the settlor's understanding was of what this trust meant. And he could not have been clearer in that letter. Subsequently. Now, didn't the judge say in his ruling that the only undisputed, admissible extrinsic evidence was the fact that this was executed as a part of divorce settlement? Yes. If you listen to my prior remarks, the judge was very careful to limit extraneous evidence to only that evidence available at the time the trust was entered into. These letters were written 20 years later. So you're saying the judge made a mistake? No, I'm not. I'm saying that the judge was absolutely true to what he was trying to do, which was to say that extrinsic evidence can only be admitted if it existed at the time that the trust was entered into. Okay, so he didn't consider that evidence? As I said in his footnote. But this evidence helped you. Yes. But you're saying although he didn't consider it, he still came to the right conclusion. Correct. Okay, got it. If I could go back to what I filed to begin with, I filed a combined motion, two separate motions for summary judgment combined into one. And the first motion dealt solely with the issues which the judge addressed. The second motion dealt with basically saying that the intent of this set law was otherwise obvious, regardless of any discussions of ambiguity or anything else. It was obvious. And it was obvious for two reasons. Number one, because when you looked at the whole pattern of trusts, wills, et cetera, it was very clear that the goal of the entire family, not only the set law but of his parents, was to treat everybody as fairly as they could. And I cited then a number of all these agreements that went into great detail. I did that again in my brief before this court because Mr. Lieberman totally ignored the fact that Continental Bank had been trustee for 35 years, was familiar with everything, and was administering all these trusts. At the time that Settler died, Continental was administering eight separate trusts for grandchildren. Counsel, what do you think the law is as far as extrinsic evidence? What can the court consider in trying to determine the testator's intent at the time of the writing? In order to determine the testator's intent, separate from trying to determine whether there's an ambiguity, two separate questions, two separate tests. That's what I'm saying. I'm saying that if we're only looking to what is the intent of the set law, you can admit anything at any time. On the other hand, if what we're looking at is to determine whether an ambiguity existed at the time the document was entered into, then we only look at the information available at that time. That's what I'm saying. Thank you. I have another question that's just kind of basic. So is it your position that whether we look within the four corners of the document or we admit this extrinsic evidence, it still comes to the same conclusion that these four grandchildren are the beneficiary or the remainder men and the other grandchildren are not a part of that? Is that your position? That's exactly my position. My position is that the judge was correct in his ---- It doesn't matter whether they bring in extrinsic evidence or they don't bring it in. It's the same thing. Well, again, I ---- I mean, the document says speaks for itself. Exactly. The document speaks for itself. Language is clear and concise. But if we do as Mr. Lieberman says and allow extrinsic evidence in, it still wouldn't help him because that extrinsic evidence would still point to the fact that these are the four remainder men that the settler wished to take. That's correct. And I might add one more thing in that over a year of discovery, aggressive discovery, not one piece of paper was ever developed which in any way supports Mr. Lieberman's position. There is none. To send it back for what? Nothing else exists. Can I go on to fees? Briefly because your time is running out. Excuse me. General rule is that in a trust construction case, each party pays its own fees. There are a few exceptions. These exceptions don't apply. There is no ambiguity here in this case. Therefore, the ambiguity exception does not apply. Is there any bad faith on the part of the bank coming forward to say that they thought there was an ambiguity? Okay. That's a $64 question. The fact is the bank made a very big mistake in 2006 when a junior trust officer, Ms. Hall, wrote a letter to William, the eldest son of the settlor, telling him that his four children were beneficiaries of the Picker Trust, a trust which he had never even heard of. And he wrote to his children sending them a copy of the letter and saying it looks like we're all beneficiaries of this trust. Okay. When Ms. Picker finally dies and the bank is looking at what their options are, they're stuck with this letter. Well, they could have changed their mind, could they not? It's my understanding that William was a continuing client of the bank, and why would you change your mind under those circumstances? I think they simply threw up their hands and said, look, here's a way out. We'll file a construction case. That's what they did. Mr. O'Keefe, what's the standard of review on that issue? On the issue of which, Your Honor? The fees. Okay. Again, fees are not allowed. And the reason is that. What is our standard of review, Mr. O'Keefe? What's the basis on which we should review this? The fees? Discretion or something else? No. This is not a discretion case. This is a case where the general rule is that no fees are paid. My fees shouldn't be paid out of the trust. His fees shouldn't be paid out of the trust and Mr. Lieberman's fees. So you're saying as a matter of law. As a matter of law, correct. So you're saying the standard of review is de novo on the fee issue? Well, the court never decided the fee issue. I know. But for us, I'm asking what is the standard of review that we should be applying? Well, the only question that you really have on the fees is whether. Oh, well, I get to decide the question that I have. And the one I've asked you is what is the standard of review? The standard of review is, as I just said, fees are not generally paid under these circumstances. That's the law. And those are the cases. I cited two cases, which the merchants case and Bailey versus Continental Bank versus Bailey, both of which deal with situations where a client like Mr. Lieberman's did not file the case but is brought in later by the trustee bank. And I feel sorry for people in that position because what Mr. Lieberman is saying with good reason is, look, I didn't initiate this. They brought me in. I should get paid. I agree he should get paid, but not by the trust. Our position is, and we still have pending, arguments that Bank of America should pay everybody's fees in this case. They're responsible. They never should have bribed the state. All right. Are there anything else, Mr. O'Keefe? If not, let me see if there's any other questions from the panel. All right. Thank you. Does Counsel for Bank of America need to address any issues or questions, either that you want to say or from the panel? I'd just like to. Keep in mind when you don't file a brief, we usually don't let you argue. But if there's something. I just want to address the comments about potential bad faith by the bank and just feel compelled to respond that as a trustee, given the document in front of us, we did what we thought was proper, which was the language on its face was in light of, on its face was ambiguous and a latent ambiguity existed. And we put it in front of the trial court, who, and I don't believe this is in the record, who also said I don't know what else the bank could have done in this situation than to bring a petition to construe the trust. You could have just paid out to the fore and let somebody sue you. And we could have just paid out to the fore and let someone sue us, which banks love to do. But, Justices, the other comment about what could have happened is instead of motions for summary judgment, if it was such a dead bang winner of an argument that respectfully Mr. O'Keefe could have brought a motion to dismiss instead of waiting to bring the motion for summary judgment status, we still believe that there's an open question of Illinois law on the issue. What do you think the standard of review is? Since Mr. O'Keefe really refused to answer my question. He never told me what I asked. What do you think the standard of review is? I think on the attorney's fees. On that issue, yeah. On the attorney's fees, Justice, I did not research that issue, but I would think it would be a de novo standard. Thank you. Thank you. Mr. Lieberman? Maximum of ten minutes. On your question, Justice Cunningham, we didn't cite any cases, but I'm fairly certain that the standard of review on the fee issue is de novo because the question is whether there's an honest difference of opinion based on the language of the trust and whether there's an ambiguity. That question we cite authority from this court from this year is de novo and to be determined as a matter of law. And I'll start from the back since we're on the issue of fees. As counsel pointed out, even the trustees over different periods of time had different interpretations of this instrument. Way back in time, Continental Bank, for reasons that we think have to do with miscoding the document from the get-go, came to one interpretation. And then, as counsel alluded, in 2006, my clients got letters saying they were beneficiaries. And for five years, nothing changed. They were told they were beneficiaries, and the next thing that happened, they were told that Mrs. Picker died and that the bank was bringing this petition quite appropriately in our view. And to answer your question, Justice DeLort, if the bank just paid out to the fore, we cite the Hoyer decision, the Hoyer Northern Trust decision, for other reasons. But in that case, this court took a pretty hard position on that bank for being partisan in a trust construction action. And the law in Illinois since that decision is trustees have to be very careful to be neutral right down the middle, and that's what this trustee did in bringing this petition. And they, in good faith and we believe quite correctly, found this provision ambiguous. And since they had told different beneficiaries different things at different times, it seemed to me the prudent action. In terms of the record that's before the court, one, I want to point out on the issue of fees, the correcting this record was actually from our office, my paralegal, Mr. Modamba, who's in the back, is the one that discovered the record was incomplete. We completed the record. By the way, there's nothing new around here. I'm sorry? Nothing new? There's nothing new around here. The aggressive discovery in the trial court, we undertook. We had to move to compel the law firm that was Mr. Koch's lawyers to get all these documents, and that's where these documents all were found. But I also want to turn to that footnote, too. Let me stop you on that. Because I asked Mr. O'Keefe the question, and he gave me a fine answer, but I want to make sure this, the stuff that's in the supplemental record was, in fact, before the trial court? Or was it not before the trial court, but somebody thought it would be helpful and somehow it ended up in a supplemental record? It was certainly before the trial court attached to Mr. O'Keefe's briefs. And I cannot tell you the specific answer, because as the court says in its memorandum opinion in footnote two, it didn't consider certain of the extrinsic evidence. It struck an affidavit. There was an improper affidavit. It struck an affidavit. I don't know whether these documents were not properly authenticated because of that. And then it also determined as a matter of law it could not review post hoc extrinsic evidence. I don't know whether, I don't know what the reasoning was it didn't look at this record. It certainly, this letter, they were certainly attached to Mr. O'Keefe's file like that. That I do remember. In terms of Justice Conner's question about when post hoc extrinsic evidence can and cannot be considered, I respectfully submit that Mr. O'Keefe has it absolutely the reverse. And there's cases cited in our brief. City of Rockford is on page 12 of our opening brief. That's the case that the trial court relied on. And there the court says, quote, this court says, A latent ambiguity occurs where a writing appears on its face clear and unambiguous, but which in fact, as shown by extrinsic evidence, is uncertain in meaning. No temporal limitation in that. And then we cite another case where this court, the appellate court, I don't remember which district, the Stieberg case, third district, actually did look at post hoc evidence. Then in terms of looking at extrinsic evidence to determine meaning and ambiguity, City of Rockford, again, on page 13 of our brief, and I'll quote it. In construing an ambiguous deed, the intention of the parties may be ascertained by considering the surrounding circumstances existing at the time of its execution. That's the law in Illinois. That's the Illinois Supreme Court in City of Rockford. That's the case, one of the cases, the principal case that the trial court relied on to say I'm not going to look at extrinsic evidence to determine ambiguity. And that's where we say the error is. And in some sense, unpacking the error isn't relevant because this court's review is de novo. It has to determine on its own whether there's an ambiguity. But we would ask you to look at the Illinois Supreme Court's decision in City of Rockford and the other cases we cite. And we believe the trial court was correct in footnote two when it said I'm not looking at post hoc extrinsic evidence such as letters from 20 years later. And we can have a trial and a proceeding on everything that happened over those 20 years and how that letter came to be and what was in the files of Continental Bank, which we did submit on summary judgment. But that's a much more complicated undertaking and it's not one that the law allows the trial court or we submit respectfully this court to undertake. Counsel, as far as the analysis of intent of the test data versus ambiguity of the document, which one comes first? Or do they both go at the same time? Ambiguity, absolutely. Yeah, thank you. But until you determine whether the instrument's ambiguous, you can't determine what's the scope of information I'm going to look at. Is it the four corners of the document or is it extrinsic evidence? As to whether it's a case of first impression, I just ask counsel show me the Illinois case that is similar to this. The Senate case that Mr. O'Keefe cited we deal with in our reply brief at page 10, that was a case about what the term surviving issue means in the instrument when there's adoptives. Does surviving issue include adoptives? It's an interesting case on that point, but it has nothing to do with the type of ambiguity here. As to the type of ambiguity here, three courts in the nation that we know of have looked at it, written on it, and they've said these provisions are ambiguous. And unless, and I'd like to make one other point, unless there is a clear statement, if Mr. O'Keefe says that his document could not be more clear, if Mr. Cox intended to exclude later board and grandchildren, he absolutely could have expressly said so. And that's what a seasoned trust, the state lawyer, would deal with that contingency probably and see that contingency. But he absolutely could have said only these four, not any coming later. He didn't say that. And that's what those three other state court opinions focus on. I appreciate the court's time and attention. All right. Thank you very much, Mr. Lieberman and Mr. O'Keefe, for your arguments. Counsel for the bank as well. The court will take the matter under advisement and court will stand adjourned.